In the Interest of Lindsey A.F., a Person Under the Age of 17:

State of Wisconsin, Petitioner-Appellant-Petitioner,

v.

Lindsey A.F., Respondent-Respondent.

Supreme Court

*Nos. 01–0081, 01–0082. Oral argument March 4, 2003.— Decided June 20, 2003.*

2003 WI 63

(Also reported in 663 N.W.2d 757.)

For the petitioner-appellant-petitioner there were briefs by *Susan M. Crawford,* assistant attorney general, and *James E. Doyle,* attorney general, and oral argument by *Sally L. Wellman,* assistant attorney general.

For the respondent-respondent there was a brief and oral argument by *Eileen A. Hirsch,* assistant state public defender.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, State of Wisconsin, seeks review of a published court of appeals decision that affirmed two orders of the circuit court, dismissing delinquency petitions against Lindsey A.F.[1] The State asserts that because the juvenile was not in custody, the circuit court lacked authority to dismiss the first petition and refer the matter for deferred prosecution. Further, the State argues that even if the circuit court had such authority, it erred when it concluded that the district attorney could not terminate the court ordered deferred prosecution by the filing of a second petition.

¶ 2. We determine that under Wis. Stat. § 938.21(7) (1999–2000),[2] a circuit court has authority to dismiss a juvenile delinquency petition and refer the matter for deferred prosecution regardless of whether the juvenile is in custody. Additionally, we conclude that a district attorney cannot terminate a court ordered deferred prosecution by filing a second delinquency

---

[1] *State v. Lindsey A.F.,* 2002 WI App 223, 257 Wis. 2d 650, 653 N.W.2d 116 (affirming orders of the circuit court for Dane County, Michael N. Nowakowski, Judge).

[2] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

petition containing the same charge and factual basis. Accordingly, we affirm the court of appeals.

I

¶ 3. Lindsey A.F., age 13, sold marijuana while in a middle school. Her case was referred to an intake worker, who subsequently referred the case to the district attorney with a recommendation that the district attorney file a delinquency petition and enter into a consent decree. The district attorney filed a delinquency petition but did not pursue a consent decree.

¶ 4. Apparently dissatisfied with the district attorney's failure to request a consent decree, Lindsey filed a motion to dismiss the petition. She requested that the court refer her case back to the intake worker for deferred prosecution. Over the State's objection, the circuit court granted the motion, dismissed the petition, and referred the matter for deferred prosecution. Lindsey, her mother, and the intake worker then entered into a deferred prosecution agreement.

¶ 5. In an effort to terminate the deferred prosecution agreement, the State filed a second delinquency petition containing the same charge and factual allegations as set forth in the first petition. Lindsey again filed a motion to dismiss, arguing that the second petition was the same as the first petition and that no new information existed to justify the re-filing of an already dismissed petition. The court agreed and concluded that the district attorney did not have the authority to terminate the deferred prosecution agreement by filing another petition. Accordingly, it dismissed the second petition.

¶ 6. The court of appeals affirmed the dismissal of the two petitions. It examined the relevant statutes and determined that the district attorney's consent was not

required for the circuit court to dismiss the delinquency petitions and refer the matter for deferred prosecution.[3] *State v. Lindsey A.F.*, 2002 WI App 223, ¶ 13, 257 Wis. 2d 650, 653 N.W.2d 116. It further concluded that the district attorney did not have the authority to terminate the resulting deferred prosecution agreement by filing a new petition with the same charges and facts. *Id.*

## II

¶ 7. This case provides us with an opportunity to review the authority of the circuit court and the district attorney under Wisconsin's Juvenile Justice Code.[4] Specifically, we examine whether a juvenile must first be in custody in order for the circuit court to have authority under Wis. Stat. § 938.21(7) to dismiss a delinquency petition and refer the matter to the intake worker for deferred prosecution. If it has such authority, we must then consider whether the district attorney has the authority under § 938.245(6) to terminate the resulting deferred prosecution agreement by filing a second de-

---

[3] Although we are affirming the court of appeals decision, we note that there is a difference in rationale. This difference occurs because in the court of appeals the State argued that the circuit court lacked authority to dismiss-and-refer under Wis. Stat. § 938.21(7) without the district attorney's consent. However, before this court, the State changed its argument and primarily asserts that the circuit court's authority to dismiss-and-refer under Wis. Stat. § 938.21(7) applies only to petitions filed against juveniles in custody and only at the time of the custody review hearing.

[4] Wisconsin Stat. ch. 938.

linquency petition which contains the same charge and factual allegations as the first petition.[5]

¶ 8. The resolution of each of these issues is a matter of statutory interpretation which presents a question of law subject to independent appellate review. *State v. Setagord,* 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997). The goal of statutory interpretation is to discern the intent of the legislature. *Id.* at 406. Here, in examining the intent of the legislature, we look first to the language of the statute, and then consider other aids such as the legislative history, context, and purpose to assist in ascertaining the legislature's intent.

---

[5] We decide the issues presented even though the case is moot. While the appeal was pending in the court of appeals, Lindsey A.F. violated the terms of the deferred prosecution agreement and the case was returned to court for prosecution. Thus, this decision will have no practical effect on Lindsey A.F.'s case. As a general rule, this court will not consider an issue which will not have any practical effect upon an existing controversy. *State v. Leitner,* 2002 WI 77, ¶ 13, 253 Wis. 2d 449, 646 N.W.2d 341 (citing *State ex rel. La Crosse Tribune v. Circuit Court for La Crosse County,* 115 Wis. 2d 220, 228, 340 N.W.2d 460 (1983)). However, moot cases may be decided in a variety of circumstances, including where the issues are of great public importance or should be resolved to avoid future uncertainty. *Leitner,* 253 Wis. 2d 449, ¶ 14. This case falls within these exceptions to the general mootness rule, and thus, we reach the merits of the present case.

## III

¶ 9.   We begin by examining Wis. Stat. § 938.21(7), which the circuit court cited as the basis for its authority to dismiss the delinquency petitions and refer the matter for deferred prosecution.[6] Wisconsin Stat. § 938.21(7) provides:

> (7) Deferred prosecution. If the judge or juvenile court commissioner determines that the best interests of the juvenile and the public are served, he or she may enter a consent decree under s. 938.32 or order the petition dismissed and refer the matter to the intake worker for deferred prosecution in accordance with s. 938.245.

¶ 10.   The State argues that this provision could not serve as the basis for dismissing the petitions because it applies only to petitions filed against juveniles in custody and only at the time of the custody review hearing under Wis. Stat. § 938.21(1), which describes the hearing required for a juvenile held in custody. Lindsey was not in custody at the time the petitions were filed and the judicial proceedings that resulted in the dismissals were not custody review hearings under § 938.21(1). Therefore, according to the State, § 938.21(7) could not be relied upon as the source of authority in dismissing the petitions.

¶ 11.   We disagree with the State's interpretation of § 938.21(7) as limited to petitions filed while the juvenile is in custody and then only at the time of the custody review hearing. The statutory language in the

---

[6] Wisconsin Stat. § 938.21(7) refers to the ability of a court to order a "petition" dismissed. The present case arises in the context of a delinquency petition. Thus, the holding is confined to the applicability of § 938.21(7) to delinquency petitions.

subsection and the legislative history do not support this interpretation. Further, the existence of such a limitation would lead to an anomalous result.

¶ 12. Nothing in the language of § 938.21(7) indicates that it is limited to situations in which the child is in custody. It simply states that if the judge determines that the best interests of the juvenile and the public are served, the judge may order the petition dismissed and refer the matter to the intake worker for deferred prosecution. Nowhere in this subsection is there a statement that the judge may do this only if the child is in custody and only at the time of the custody review hearing.

¶ 13. The State emphasizes the placement of § 938.21(7) as supporting its interpretation. The State notes that § 938.21(7) is within a section titled "Hearing for juvenile in custody" and that the remainder of the section deals exclusively with hearings and other procedures for juveniles who are held in custody. The State argues that, when viewed in this context, the authority to dismiss and refer should apply only to juveniles in custody.

¶ 14. A section title is not part of the statute. Wis. Stat. § 990.001. While titles may be considered in resolving doubt as to a statute's meaning, they should not be used to create a doubt where none would otherwise exist. *Wisconsin Valley Imp. Co. v. Public Serv. Comm.,* 9 Wis. 2d 606, 618, 101 N.W.2d 798 (1960); *Brennan v. WERC,* 112 Wis. 2d 38, 41, 331 N.W.2d 667 (Ct. App. 1983). Nevertheless, the placement of § 938.21(7) within a section that primarily deals with hearings and other procedures for juveniles who are held in custody raises a question regarding whether it

was intended to be similarly limited. Thus, § 938.21(7) is rendered ambiguous as to whether it is limited to custody situations.

■

¶ 15.  We conclude, however, that the legislature did not intend such a limitation, which is a position that the State did not dispute in its court of appeals brief. In that brief, the State acknowledged that the placement of § 938.21(7) and its interaction with other statutes did not necessarily mean that the court's authority is limited:

> [T]he State is not necessarily arguing that Sec. 938.21(7) is meant to apply only to juveniles held in custody. Rather, the State maintains that the legislature placed this particular subsection where it did for a specific reason, i.e. to authorize and promote the prompt resolution of juvenile cases at the earliest opportunity.

¶ 16.  A review of the legislative history indicates that the State had it right in its court of appeals brief. The current language in § 938.21(7) can be traced back to language that existed in the 1975 version of the Children's Code, Chapter 48 of the Wisconsin Statutes. Wisconsin Stat. § 48.19 (1975) provided:

> 48.19. Informal Disposition. . . . if [the court] determines that neither the interests of the child nor of the public require that a petition be filed, [the court] may defer further proceedings on the condition that the child appear with his parent, guardian or legal custodian for counseling and advice or that the child abide by such obligations imposed upon him with respect to his future conduct as the court deems necessary or advisable to insure the child's protection, correction or rehabilitation. . . .

This provision gave the judge clear authority to order

the informal disposition of a juvenile's case as an alternative to adjudication of a delinquency petition.

¶ 17. As part of revisions made in 1977, the authority to initiate a petition in delinquency cases was assigned to the district attorney. However, the court's authority to order an informal disposition was not repealed. Rather, it was moved from Wis. Stat. § 48.19 (1975) to Wis. Stat. § 48.21(7) (1977):

> (7) Informal disposition. If the judge or juvenile court commissioner determines that the best interests of the child and the public are served, he or she may enter a consent decree under s. 48.32 or order the petition dismissed and refer the matter to the intake worker for informal disposition in accordance with s. 48.245.

¶ 18. Although the language had been modified, Wis. Stat. § 48.21(7) (1977) clearly had its roots in Wis. Stat. § 48.19 (1975). Both are entitled "Informal Disposition." Both use the same criteria. Under Wis. Stat. § 48.19 (1975), the criteria is whether the court "determines that neither the interests of the child nor of the public require that a petition be filed." The criteria in Wis. Stat. § 48.21(7) (1977) is whether the court "determines that the best interests of the child and the public are served." Finally, both address the same issue, whether a juvenile's case should be handled informally rather than requiring an adjudication on the petition.

¶ 19. We note that Wis. Stat. § 48.21(7) (1977) was placed within a section, Wis. Stat. § 48.21 (1977), titled "Hearing for child in custody," similar to the placement of the current Wis. Stat. § 938.21(7). Lindsey advances an explanation for this placement of the informal disposition provision: Wis. Stat. § 48.21 (1977) was the first place where the judge made any decisions in the process. Accordingly, it made sense to

have the dispositional options described in Wis. Stat. § 48.21(7) placed there, even though they would be applicable throughout the process. The State acknowledged as much in its court of appeals brief when it stated that "the State maintains that the legislature placed this particular subsection where it did for a specific reason, i.e. to authorize and promote the prompt resolution of juvenile cases at the earliest opportunity."

¶ 20.   We also note that the State's interpretation would generate an anomalous result. A juvenile that is held in custody usually poses a more serious threat to public safety than a juvenile who has not been placed in custody. Presumably, dismissal and referral for deferred prosecution is more likely to be appropriate in those cases in which the juvenile is not a serious threat to public safety. However, under the State's interpretation, the court has authority to dismiss-and-refer in the serious cases where dismissal and referral is less likely to be appropriate, but the circuit court does not have authority to dismiss-and-refer in the less serious cases where it is more likely to be appropriate.

¶ 21.   The State argues that this anomalous result can be explained. It notes that the time frame for filing a petition is significantly shorter when a juvenile is held in custody. Wisconsin Stat. § 938.21(1) generally requires that a petition be filed and a hearing held within 24 hours after the end of the day that the decision to hold the juvenile in custody was made, excluding Saturdays, Sundays, and legal holidays.[7] As a result, the

---

[7] Wisconsin Stat. § 938.21 provides, in relevant part:

(1) Hearing; when held.

(a) If a juvenile who has been taken into custody is not released under s. 938.20, a hearing to determine whether the juvenile shall

intake worker and the district attorney operate under significant time constraints in conducting an inquiry prior to the filing of a petition. In such cases, according to the State, it makes sense to permit the circuit court to dismiss-and-refer in order to allow the intake worker to conduct a more thorough inquiry.

¶ 22.   However, given that the hearing is held within 24 hours of the custody decision, it is unlikely that the court will have any information that the intake worker and the district attorney did not have when the petition was drafted. Accordingly, it seems odd that the authorization to dismiss-and-refer would apply only to situations in which the circuit court has limited information. It seems more logical to permit a circuit court to delay its decision to dismiss-and-refer until after a further investigation takes place. However, under the State's interpretation, the court may exercise the authority to dismiss-and-refer only at the custody hearing and may not delay its decision until it has the results of a further investigation.

¶ 23.   Finally, we observe that an enumerated purpose of the Juvenile Justice Code is to provide an individualized assessment of each alleged delinquent juvenile "in order to prevent further delinquent behavior through the development of competency in the juvenile offender so that he or she is more capable of living productively and responsibly in the community." Our interpretation of § 938.21(7) ensures that the circuit judge has adequate authority to advance this purpose. The importance of this purpose is reflected in

continue to be held in custody under the criteria of ss. 938.205 to 938.209 (1) shall be conducted by the judge or juvenile court commissioner within 24 hours after the end of the day that the decision to hold the juvenile was made, excluding Saturdays, Sundays and legal holidays.

the criteria set forth in § 938.21(7) which directs the judge to consider the "best interests of the juvenile and the public" in determining whether to dismiss-and-refer.

¶ 24. In *State v. Hezzie R.*, 219 Wis. 2d 848, 873, 580 N.W.2d 660 (1998), we explained that "the legislature did not lose sight of the fact that the [Juvenile Justice Code] provisions are distinct from the criminal code provisions, and that the rehabilitation of juveniles is a primary objective." In describing the substantive provisions that show the differences between the criminal code and the Juvenile Justice Code, the court noted that one of these differences is the circuit court's ability to dismiss-and-refer when it is in the best interests of the juvenile and the public:

> [I]n accord with Wis. Stat. § 938.21(7), a judge or juvenile court commissioner has the discretion to dismiss a petition and refer a juvenile's case to a social worker for deferred prosecution, if it is "in the best interests of the juvenile and the public."

*Id.* at 874.

¶ 25. Therefore, based on our examination of the statutory language, the legislative history, context, and purpose, we determine that the legislature did not intend the interpretation advanced by the State. Rather, we conclude that the legislature intended that a court would have the authority to dismiss-and-refer under § 938.21(7) even when the juvenile is not in custody.

## IV

¶ 26. We turn now to the district attorney's authority under Wis. Stat. § 938.245(6) to terminate the

deferred prosecution agreement by filing the second delinquency petition. Wisconsin Stat. § 938.245(6) provides in relevant part:

> (6) A deferred prosecution agreement arising out of an alleged delinquent act is terminated if the district attorney files a delinquency petition within 20 days after receipt of notice of the deferred prosecution agreement under s. 938.24(5). . . .

The State argues that the circuit court's dismissal of a delinquency petition under § 938.21(7) does not preclude the district attorney from terminating the subsequent deferred prosecution agreement by filing another delinquency petition pursuant to § 938.245(6).

¶ 27.   We disagree with the State's interpretation of § 938.245(6) as allowing the district attorney to terminate the deferred prosecution agreement in this case. Such an interpretation misreads the scope of the notice requirement in Wis. Stat. § 938.24(5) and eviscerates the authority explicitly granted to the court by § 938.21(7).

¶ 28.   As highlighted by the particular facts of this case, the State's interpretation creates an odd framework in which the district attorney can nullify a decision of the circuit court to exercise its authority under § 938.21(7) to dismiss a petition and refer the matter for deferred prosecution. In this case, the circuit court, over the State's objection, dismissed the initial delinquency petition that the State filed against Lindsey and referred the matter to the intake worker for deferred prosecution. Lindsey, her mother, and the intake worker then entered into a deferred prosecution agreement. Dissatisfied with this result, the district attorney attempted to terminate the deferred prosecution agree-

ment and continue to seek a delinquency adjudication. It did so by filing a second petition containing the same charge and factual basis.

¶ 29. This result is seemingly at odds with the dismissal authority granted to the court in § 938.21(7). Nevertheless, the State argues that the interaction of the relevant statutes supports this result. In particular, the State argues that, after a court exercises its authority under § 938.21(7) to dismiss-and-refer, § 938.24(5) requires that the intake worker provide written notice to the district attorney when the parties enter into the deferred prosecution agreement. According to the State, this notice in turn triggers the authority of the district attorney to terminate the deferred prosecution agreement under § 938.245(6).

¶ 30. However, the process leading to the notice required by § 938.24(5) is the initial intake procedures governed by Wis. Stat. § 938.24. A brief discussion of the underlying statutory framework for intake and referral provides context for evaluating the State's argument.

¶ 31. Wisconsin Stat. § 938.24 sets forth the process by which a district attorney receives notice of the juvenile's case. Pursuant to this process, the intake worker performs an inquiry after which the intake worker may request that a petition be filed, enter into a deferred prosecution agreement, or close the case. If the intake worker enters into a deferred prosecution agreement, § 938.24(5) requires that notification be sent to the district attorney. A district attorney then has 20 days from the receipt of such notice to exercise its authority under § 938.245(6) to terminate the deferred prosecution agreement.

¶ 32. Section 938.245(6) is not a blanket grant of authority empowering a district authority to terminate

a deferred prosecution agreement. Rather, the authority is triggered by receipt of the § 938.24(5) notice. However, as noted above, a § 938.24(5) notice is a part of the initial intake procedures, not a part of a court ordered deferred prosecution.

¶ 33. When a court orders deferred prosecution under § 938.21(7), there is no statutory notice requirement. Unlike the notice requirement set forth in § 938.24(5) which triggers termination authority under § 938.245(6), here there is no required notice to provide the necessary triggering event. The fact that the termination authority under § 938.245(6) is tied to and triggered by an intake worker notice is not unique. An intake worker notice is also required to trigger the district attorney's termination authority under § 938.245(7) which addresses noncompliance with a deferred prosecution agreement.[8]

¶ 34. Accordingly, we agree with the court of appeals that while § 938.245(6) authorizes a district attorney to override a determination made by an intake worker within 20 days after receipt of notice, it does not authorize a district attorney to override a determination made by the circuit court. *Lindsey A.F.*, 257 Wis. 2d 650, ¶¶ 13, 16. Based on a proper reading of the notice

---

[8] Wisconsin Stat. § 938.245(7)(a) provides in relevant part:

(a) If at any time during the period of a deferred prosecution agreement the intake worker determines that the obligations imposed under it are not being met, the intake worker may cancel the deferred prosecution agreement. Within 10 days after the cancellation of the deferred prosecution agreement, the intake worker shall notify the district attorney, corporation counsel or other official under s. 938.09 of the cancellation and request that a petition be filed. In delinquency cases, the district attorney may initiate a petition within 20 days after the date of the notice regardless of whether the intake worker has requested that a petition be filed.

requirement of § 938.24(5), the scope of the district attorney's ability to terminate a deferred prosecution agreement under § 938.245(6), and the authority granted to judges under § 938.21(7), we conclude that the district attorney did not have the authority to terminate the deferred prosecution agreement in this case.

¶ 35.   In sum, we determine that under Wis. Stat. § 938.21(7), the circuit court had the authority to dismiss the delinquency petitions and refer the matter for deferred prosecution. We further conclude that the district attorney cannot terminate the resulting deferred prosecution agreement by filing a second delinquency petition containing the same charge and factual basis. Accordingly, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.